(21 Misc. Rep. 285.)

## RALLI et al. v. WHITE.

(Supreme Court, Appellate Term. October 1, 1897.)

1. LLOYD'S INSURANCE ASSOCIATIONS—ATTORNEYS IN FACT—EVIDENCE.
   The original attorneys in fact for a Lloyd's insurance association, doing business as the Metropolitan Lloyd's, were defendant and W. B. There was evidence, however, that they became such merely for the purposes of organization. After organization, they appointed H. B. & Co. as attorneys, and the latter thereupon issued policies. Thereafter, and before the

loss on a policy issued by 'H. B. & Co., the right to use the association's name was transferred to E. & Co., and they reorganized the association under the same name, with new underwriters, and continued its business as the previous attorneys had done, at the same office. *Held*, that a finding that defendant and W. B. were not the attorneys in fact at the time of loss was warranted.

**2. SAME—CHANGES IN PERSONNEL—ESTOPPEL TO DENY AGENCY.**

The holder of a policy issued by H. B. & Co. was not notified of any changes in personnel of the association, and E. & Co. were openly allowed to hold themselves out as legally representing the association as its authorized attorneys in fact. *Held*, proofs of loss having been served on E. & Co., that the original underwriters were estopped, after their retirement, to deny the agency of E. & Co. as against said policy holder.

**8. PLEAS IN ABATEMENT—FURNISHING BETTER WRIT.**

In an action on a Lloyd's policy against one of the underwriters, a plea in abatement for failure to proceed against the attorneys in fact of the association was defective, where it did not give the names of such attorneys in fact, or allege that they were qualified and acting as such, so that plaintiff might have a better writ.

Appeal from city court of New York, general term.

Action by Pandia C. Ralli and another against Arthur White. A judgment entered by the city court in favor of plaintiffs was affirmed by the general term (46 N. Y. Supp. 376), and defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ. ·

E. H. Murphy (W. C. Beecher, of counsel), for appellant.

Charles Wehle, for respondents.

McADAM, J. The action is on a Lloyd's policy issued in the name of the defendant and 19 other underwriters, doing business as an insurance association under the name and title of the Metropolitan Lloyd's. The policy insured the Kaufman Milling Company in the sum of $4,000 against loss or damage by fire to certain merchandise of that corporation, contained in the store and frame elevator of the President Mills, situated at Bethalto, Madison county, Ill. The form of policy was the usual one issued by Lloyd's companies, and the liability of each of the 20 underwriters was severally fixed at $200, making the total amount insured. Upon the trial the parties admitted (1) the corporate existence of the insured; (2) the issuing of the policy; (3) the interest of the insured in the property; (4) that a fire occurred during the lifetime of the policy, whereby the property insured was damaged to the amount of $2,675.57; (5) that the proportionate part of the loss for which the defendant was liable, if at all, amounted to $133.77; and that the right of action had been duly transferred to the plaintiffs. Two questions were reserved for litigation: (1) Whether the proofs of loss were properly served. This was to be determined from the evidence. (2) Whether the action was properly brought against the defendant as one of the underwriters, or should have been brought against the attorneys in fact of all the underwriters,—a question which, as presented, is a mixed one of law and fact.

The second question reserved is in the nature of an objection to the form of the action, based on that part of the policy which pro-

vides that "no action shall be brought by the assured to enforce the provisions of this policy except against the attorneys in fact, as representing all of the underwriters, and each of the underwriters hereby agrees to abide the result of any suit so brought, as fixing his individual responsibility thereunder." This provision has been before the courts in actions on similar policies, and it has been decided that, where the attorneys in fact are not underwriters, such provision is contrary to public policy, and void (Knorr v. Bates, 14 Misc. Rep. 501, 35 N. Y. Supp. 1060; Id., 12 Misc. Rep. 395, 33 N. Y. Supp. 691; Farjeon v. Fogg, 16 Misc. Rep. 219, 37 N. Y. Supp. 980); but where the attorneys in fact are underwriters, and liable as such on their contractual obligation, the stipulation that only one of their number should be sued, to prevent a multiplicity of suits and an unnecessary accumulation of costs, is valid (Concentrating Works v. Ackermann, 6 App. Div. 540, 39 N. Y. Supp. 585; Stieglitz v. Belding, 20 Misc. Rep. 297, 45 N. Y. Supp. 670; Lawrence v. Schaefer, 20 App. Div. 80, 46 N. Y. Supp. 719). So that in this case, unless there were one or more attorneys in fact who were underwriters, against whom the action should have been instituted, it was properly brought directly against one of the underwriters, for, since the contract is several in its terms, each obligor should be separately sued. Barb. Parties, 117.

The defendant claims that William C. Beecher and Arthur White are underwriters, as well as attorneys in fact of all the underwriters, and that the suit should therefore have been against them as such attorneys, in which event judgment might have gone against them in the one action for the entire loss, thus binding all the underwriters for their proportionate amount thereof. Leiter v. Beecher, 2 App. Div. 577, 37 N. Y. Supp. 1114. William C. Beecher and Arthur White were undoubtedly attorneys in fact at the time of the organization of the association, but Mr. Beecher testifies that they became such for the purpose merely of organizing, and, when the organization was complete, they appointed Beecher & Co. (a firm composed of H. B. Beecher and V. R. Schenck) assistant attorneys; and this firm of Beecher & Co. issued the policy in suit, August 23, 1894, signing it, not as assistants, but as "Attorneys for the Underwriters." William C. Beecher and Arthur White never issued any policies, and the practical details of the business were conducted by Beecher & Co., who in fact managed everything concerning it. It appears that about January 24, 1895, Beecher & Co., having, by the consent of the underwriters, obtained the right to use the name Metropolitan Lloyd's, transferred such right to Edwards & Co.; and the latter firm reorganized the association chiefly with new underwriters (a few only of the old underwriters, whose names do not clearly appear, remaining), and continued the business of the Metropolitan Lloyd's at the offices occupied by that association when it issued the policy in suit, putting up the sign, "Henry Edwards & Co., Attorneys and Managers for the Underwriters at the Metropolitan Fire Lloyd's and Indemnity Fire Lloyd's"; and Beecher & Co., the former managers, took offices in another part of the building. It also appears that, after this transfer of control, William C. Beecher and

Arthur White practically ceased to be the attorneys in fact of the underwriters, and were superseded by Edwards & Co., into whose hands the management of the association was placed. However objectionable the method of changing control and the right to use the business name Metropolitan Lloyd's may have been, the underwriters who authorized and permitted the consummation of the scheme cannot now complain, as against a policy holder, of the natural results that followed, for the consequences should have been foreseen by them, and they probably were. The question whether the state could complain is not before us. It was further shown that there were 12 or more changes in the membership of the Metropolitan Lloyd's, so that those not in the secret could not become informed thereof. It has not been claimed that this change of personnel dissolved the association, or that each change gave rise to a new organization, for the Metropolitan Lloyd's went on as before, with the old business name at its old offices or meeting place; so that, so far at least as the public is concerned, it survived the different changes. Strange complications might follow the withdrawal of members, and the substitution of new ones, if those liable as underwriters were not after their retirement bound by the action of the management.

The facts established were sufficient to warrant the trial court in holding, as it did, that William C. Beecher and Arthur White were not the attorneys in fact of the Metropolitan Lloyd's at the time of the fire, and that the proofs of loss were properly served at the offices of the association on Edwards & Co., who were openly allowed to hold themselves out as legally representing it, as the authorized attorneys in fact and managers of the underwriters, and that such service operated as a valid service on the association, within the purposes and requirements of the policy. Walker v. Beecher, 15 Misc. Rep. 149, 36 N. Y. Supp. 470. Indeed, the policy specially provides that notice of the fire and the proofs of loss shall be served upon the attorneys of the underwriters, which, by legal construction, means those for the time being, and such service was made in this instance by the insured. It will not do for the underwriters to allege, as against the plaintiffs, innocent third parties, irregularity in the appointment of Edwards & Co.

The rule applicable is thus stated by Morawetz, in section 637 of his work on Corporations:

"If a person is held out as the agent of a corporation, by superior agents, who might have properly appointed him, a party dealing with such agent in good faith is entitled to assume that a regular appointment was made; and the corporation will be liable in such case, although the agent was not appointed in the manner prescribed by the company's charter. Thus, 'if a person acts notoriously as cashier of a bank, and is recognized by the directors or by the corporation as an existing officer, a regular appointment will be presumed; and his acts as cashier will bind the corporation, although no written proof is or can be adduced of his appointment.' The same doctrine was expressed in an English case as follows: 'The company is bound by what takes place in the usual course of business with a third person, where that third person deals bona fide with persons who may be termed de facto directors, and who might, so far as he could tell, have been directors de jure.' [In re County Life Assur. Co., 5 Ch. App. 288.] After a corporation has invested an agent

with apparent authority to represent it. persons dealing with such agent may rely upon this apparent authority until they have received notice in some way that the authority has expired or has been revoked."

The trial court was also right in deciding that William C. Beecher and Arthur White were not necessary parties as attorneys in fact, and that the action as brought was maintainable.

The underwriters adopted the style "at Metropolitan Lloyd's" that their venture might be distinguished from other Lloyd's concerns. See Crawford v. Collins, 45 Barb. 269; Wright v. Hooker, 10 N. Y. 51; Bank v. Gallaudet, 120 N. Y. 298, 24 N. E. 994. The association located offices at which its business was to be carried on and its meetings held, and to which its customers were invited to call in case of loss or other business; and if what occurred thereat with the attorneys in fact and managers does not bind the underwriters, simply because of a devolution of interest and representation, we have reached a stage of Lloyd's insurance fully as dangerous to the public as any that has become known. The various changes of membership were not made known to the insured, who acted towards the representatives of the association as it had the right to do, upon appearances which the underwriters created, and upon a holding out to the public which they sanctioned, and for which they are responsible, upon equitable principles of estoppel. Bank v. Aymar, 3 Hill, 262; Griswold v. Haven, 25 N. Y. 595, 601; Railroad Co. v. Schuyler, 34 N. Y. 30; Bank v. Cornen, 37 N. Y. 320; Grosvenor v. Railroad Co., 39 N. Y. 34; Armour v. Railroad Co., 65 N. Y. 111; Bank of Batavia v. New York, L. E. & W. R. Co., 106 N. Y., at page 199, 12 N. E. 433; Bridenbecker v. Lowell, 32 Barb. 9; Lefler v. Field, 50 Barb. 407; Doubleday v. Kress, 60 Barb. 181; Talmage v. Nevius, 32 N. Y. Super. Ct. 38; Richards, Ins. (2d Ed.) 87. The underwriters knew that what Edwards & Co. did after succeeding to the use of the trade-name would naturally follow. change of control, and that patrons would, in the nature of things, continue to deal at the accredited agency with those placed in charge. The underwriters therefore cannot set up ignorance to avoid responsibility. See Bigelow, Estop. 540 et seq.

Upon well-settled principles, direct proof of agency may be dispensed with by estoppel. The inquiry always is whether the party against whom an estoppel is alleged has, by his actions or his words, influenced the conduct of others, so that a wrong would be done to those influenced if a party should be permitted to show a state of facts inconsistent with his actions and words. Carpenter v. Stilwell, 11 N. Y., at page 73. "If a person maintains silence when in conscience he ought to speak, equity will debar him from speaking when conscience requires him to be silent." Hall v. Fisher, 9 Barb. 17; 6 Wait, Act. & Def. 705. Or, as the axiom is sometimes expressed, "He who holds his peace when he ought to have spoken shall not be heard now that he should be silent." 8 Wait, Act. & Def. 524. A party to a contract containing a provision that it shall not be altered or modified except by a written agreement signed by both parties may by his conduct estop himself from enforcing that provision against a party who has acted on such conduct. Dunn v.

Steubing, 120 N. Y. 232, 24 N. E. 315; Bishop v. Insurance Co., 130 N. Y. 488, 496, 29 N. E. 844; Stout v. Jones, 9 N. Y. St. Rep. 570; Porter v. Swan (City Ct. Brook.) 17 N. Y. Supp. 351. If the original underwriters did not intend to deceive and mislead the public, such was the effect of their acts. Adams v. Brown, 16 Ohio St. 75. And it is not necessary to an equitable estoppel that the party should design to mislead. It is enough that the act was calculated to mislead, and actually did mislead, another while acting in good faith, with reasonable care and diligence. Bank v. Hazard, 30 N. Y. 226; Blair v. Wait, 69 N. Y. 113; Boardman v. Railroad Co., 84 N. Y. 157. The rule is applicable to the law of agency "that, where one of two innocent persons must suffer by the misconduct of a third person, that party shall suffer who, by his act and conduct, has enabled such third person, by giving him credit, to practice a fraud or imposition on the other party." Story, Ag. § 56. Thus, in Dreher v. Connolly (Com. Pl.) 9 N. Y. Supp. 635, it appeared that plaintiff's assignor sold and delivered merchandise for the use of a saloon formerly conducted by defendants, but in fact at that time occupied by one McGonigle, and that defendants' firm name was continued upon the premises without any indication of change of ownership; and it was held that plaintiff's assignor was justified in assuming that defendants continued to be owners, and that defendants, by so permitting the use of their firm name, were estopped from denying that the sale was to them, and on their credit. So, if an insurance company holds out to persons insured an officer or agent to represent it in respect to losses, and to speak for it at its office in negotiations for the settlement and appraisement of losses, it cannot afterwards question his power to bind the company. Solomon v. Insurance Co., 42 N. Y. Super. Ct. 22; Van Allen v. Insurance Co., 10 Hun, 397, affirmed in 72 N. Y. 604. As to innocent third persons, the agent's authority is determined by the nature of the business intrusted to him, and the situation in which he is placed. If he is put in possession of an office, he is enabled to do whatever business his principal has represented will be done there. 4 Wait, Act. & Def. 28. Upon equitable principles, therefore, the notice of loss to, and service of the preliminary proofs on, Edwards & Co., were properly given and made, and satisfy all the requirements of the policy. The contract is one uberrimæ fidei, demanding from the insured a disclosure of all material facts affecting the risk; and, in case of loss, a corresponding obligation respecting payment ought to be imposed upon the insurer, that the rights of each contracting party may to this extent, at least, be reciprocal.

In the primitive days of insurance, when the underwriters met at Lloyd's Coffee House, on Lombard street, London, and passed around the proposed policy of the applicant among the members, so that each could underwrite and subscribe his name for such portion of the required amount as he wished to undertake, until, by successive subscriptions, the entire amount was covered (Richards, Ins. [2d Ed.] 9, 10; 1 Arn. Ins. [Perk. Ed.] 4, 82), it was sufficient to call the contract a "Lloyd's Policy," because made at Lloyd's. But since these associations of underwriters are now numerous bodies, each inde-

pendent of the other, some distinctive name and place of meeting are necessary to determine one enterprise from another, and prevent confusion. 6 Wait, Act. & Def. 25. The present policy, therefore, recites that it was made "at Metropolitan Lloyd's, of New York City," meaning at its meeting place, the offices in Cedar street, the same premises in which Edwards & Co. continued the association's business from January 24, 1895. These associations of underwriters, of common-law origin, became popular in London, and were so favored in this state that those which on October 1, 1892, were lawfully engaged in the business of insurance were granted certain privileges, and exempted from supervision by the insurance department, and not required to report thereto, "notwithstanding any change made therein by death, retirement, or withdrawal of any such underwriters, or by the admission of others to said association." Laws 1892, c. 690, § 57; Laws 1894, c. 684. The privileges conferred upon such Lloyd's companies, and not before specially referred to, are described as consisting "of an exemption from the conditions and prohibitions prescribed and provided by section 54 of said chapter 690, Laws 1892, whereby they may transact the business of fire insurance and issue policies in the state of New York without being possessed of the capital required of a fire insurance corporation doing business in this state, and invested in the same manner, and without a certificate to the effect that they have complied with all the provisions which a fire insurance corporation doing business in this state is required to observe, and that the business of insurance specified therein may be safely intrusted to them." See complaint drawn by the attorney general in the people of the state of New York against Edward V. Loew et al., N. Y. Sup. Ct., 1st Dept., May 6, 1896. Associations possessing such exemptions and privileges should in other respects be held to the same liability that insurance corporations are to the persons with whom they hold contractual relations.

The modern methods of these associations merit notice. Instead of passing the proposed policy of the applicant among the members, that each may underwrite for such portion of the required amount as he wishes to become liable for, according to the early practice at Lloyd's, the underwriters at the Metropolitan Lloyd's (in common with those of other such associations in this state) organized for business by executing a formal instrument declaring their purpose, and authorizing attorneys in fact to issue policies in their name, binding each underwriter severally to an equal amount. These attorneys determined what risks the underwriters should assume, and the premiums to be paid therefor, and, in effect, became the chief executives and managing agents of the enterprise, having almost unlimited power in that regard. Under this system, the attorneys in fact are always to the front, with the underwriters behind them. The public, in dealing with the association, was therefore warranted in treating the persons held out by the underwriters as their accredited representatives as persons possessing the plenary power usually vested in such officers. The attorneys, on the credit of the good names of the underwriters, gather in the premiums, and the under-

writers should keep up their reputation by responding in case of loss, without unnecessary, vexatious ceremony. These associations are anomalous institutions,—not corporations or joint-stock companies, though in some respects resembling both, but a combination of individuals acting concretely as insurers. The members are not partners, for they do not bind themselves jointly, but severally, in a specified amount, until the sum insured for is made up. In England, where these institutions originated, they have been alternately called "clubs," "societies," "associations," and "individual underwriters." There the contract has been held legal where the members bound themselves severally for specified amounts, but void, as contrary to the insurance laws of that country, when the underwriters undertook a joint liability on joint capital. Lees v. Smith, 7 Term R. 338; Strong v. Harvey, 3 Bing. 304, 11 Moore, 72; Harrison v. Millar, 2 Esp. 513, 7 Term R. 340, note; Bromley v. Williams, 32 Beav. 177, 32 Law J. Ch. 716. While the extent of the liability of each underwriter is specifically limited to his individual share of the loss, the rules of law applicable to insurers generally must in other respects determine when a liability under the policy arises, and to this end the principles of estoppel, adopted from motives of public policy, apply when necessary to prevent fraud and injustice.

Another circumstance requires comment. The answer is defective in not squarely presenting the defense now urged as to parties defendant. It alleges "that the policy of insurance, as aforesaid, contains the express condition that the attorneys and managers shall be sued before any suit shall be brought against any of the underwriters upon said policy." This is in the nature of a plea in abatement, which "should give the names of the parties omitted, and show that they are alive and within the jurisdiction of the court, and within reach of its process." "Where the omitted parties are executors, it should show that they qualified and are acting as such." 1 Enc. Pl. & Prac. 17, 18. Tested by this rule, the answer should have given the names of the attorneys in fact against whom the plaintiffs ought to have proceeded, and alleged that they qualified and were acting as such, so that the plaintiffs might have a better writ. The plaintiffs could not tell from this plea whether Beecher & Co., who issued the policy, and are therein described as attorneys in fact, or Henry Edwards & Co., were referred to, and safely might, as they did, ignore both, neither being underwriters, and being consequently unnecessary parties, according to the adjudged cases. The plea should be full, clear, and specific, to answer legal requirements. It could not have been reasonably suspected in this instance that hidden behind the technical plea in abatement interposed by the defendant were the prominent and responsible names of William C. Beecher and Arthur White, as attorneys in fact; and yet this is the use the defendant sought for the first time at the trial, and more particularly on the appeal, to make of this plea, to the prejudice of the plaintiffs, —a circumstance emphasizing the necessity of requiring technical precision in pleas of this character, that the adverse party, being fully advised of the objection, may in advance of the trial recant and mend his hold, or at least, being intelligently forewarned, ad-

visedly determine what course to pursue to overcome the obstacle presented.

In concluding, it is proper to call attention to the rule that, in determining the liability of the defendant, he is entitled to the benefits of the contract, fairly construed, and can stand upon all of its stipulations.   But when the liability has become fixed by the capital fact of a loss, within the range of the responsibility assumed in the contract, courts are reluctant to deprive the insured of the benefit of that liability by any narrow or technical construction of the conditions and stipulations which prescribe the formal requisites by means of which this accrued right is to be made available for his indemnification.   A liberal and reasonable construction of the stipulations of the contract, which prescribe the formal acts on the part of the insured, necessary to the recovery of the loss, is sanctioned and required by the rules of law.   McNally v. Insurance Co., 137 N. Y., at page 398, 33 N. E. 478; Wehle v. Association, 11 Misc. Rep. 36, 31 N. Y. Supp. 865, affirmed in 153 N. Y. 116, 47 N. E. 35.

The exceptions are without merit, and the judgment rendered accords with every notion of substantial justice, finds support in legal principles, and must be affirmed, with costs.   All concur.