In the Matter of AMSTERDAM DISPATCH, INC., and Others, Petitioners, against WILLIAM S. DEVERY, as President of the Truck Drivers and Chauffeurs Union, Local No. 807, and Others, Respondents.*

Supreme Court, Special Term, New York County, April 13, 1938.

* Revd., 254 App. Div. 233; affd., 278 N. Y. ——.

*Harris J. Klein*, for the petitioners.

*Rice & Maguire* for the respondent, William S. Devery.

McCook, J. Petition by a number of common carriers in the transport industry, members of an association (Highway Transport Association, Inc.), as well as the association itself and its secretary, to compel respondents as officers of a truck drivers', teamsters' and helpers' union (Local 807) to arbitrate four points or subjects under a written agreement. Petitioners are corporations, with those two exceptions, while respondents are members of a voluntary unincorporated trade union, whose charter jurisdiction includes the five boroughs of New York city and the nearby surrounding metropolitan area: its activities in fact now embrace the New York metropolitan haulage of freight with origin or destination in other states and countries.

Between September 1, 1936, and January 1, 1937, each of the corporate petitioners made a written employment contract with its employees through the union's officials, running until September 1, 1938; it was the result of an attempt to avoid a threatened general strike or tie-up of a substantial part of the city's transportation and was consummated after long negotiations. By virtue of this agreement the union members, some ten thousand in number, gained an increase in pay and an improvement in working conditions; each side gained the assurance of a durable arrangement planned to last quite or nearly two years. It contained, beside the other matters of agreement, the following provision:

" Section No. 9. Should any difference arise between employer and employee the same shall be submitted to arbitration by both

parties; failing to agree, they shall mutually appoint an umpire, whose decision shall be final and binding."

This document was entitled "Agreement entered into between ............., party of the first part, and Truck Drivers & Chauffeurs Local 807, party of the second part, to govern all hours, wages and conditions herein set forth from September 1, 1936 to September 1, 1938."

The second document with which we are concerned is described by petitioner Highway Transport Association, Inc., as "Supplementary agreement entered into by this association with Local Union 807." Paragraphs dealing with "snap" dismissals and changes in operating methods by employers are followed by one on selection of advisory committee, which ends with this sentence: "In the event of failure by such Advisory Committee to adjust, the matter shall be referred for arbitration to..............whose decision shall be final and binding on the parties."

One of the respondents' principal points in defending refusal to arbitrate is based on a limiting description which appears at the very beginning:

"Memorandum of proposed policy and procedure discussed by the Highway Transport Association and the Union with the object of better preventing differences and avoiding strikes and lockouts, with the distinct understanding that such policy or procedure as may be adopted shall in no way affect, impair, nor is the same to be considered an amendment to the existing contracts now in force."

Respondents regard this disclaimer of a complete meeting of the minds and of an intention to amend the original contract as reinforced by the next to the last sentence of the same memorandum: "The foregoing is an endeavor to express the understanding arrived at between the Committees of the respective parties at a conference in New York City, Tuesday, October 4, 1937."

The difficulty with this contention is that, assuming that the arrangement of October fourth was tentative only, and subject to official ratification, such ratification in fact followed in the form of a communication dated December 29, 1937, written on the letterhead of the Truck Drivers and Chauffeurs, Local No. 807, I. B. of T., addressed to its attorneys:

"Re memorandum of proposed policy and procedure discussed by the Highway Transport Association and Local 807, etc.

"Gentlemen:

"The Executive Board of this Union has examined the memorandum forwarded by you and which was prepared to express the understanding arrived at between committee representing the Highway Transport Association and committee representing this Union.

" After consideration of the memorandum, the Executive Board accepted the same as prepared and authorizes and directs that you advise Mr. Cotterill, attorney for the Highway Transport Association, of the Union's acceptance.

" Very truly yours,

" TRUCK DRIVERS AND CHAUFFEURS

" LOCAL NO. 807

" I. B. of T.

" By WILLIAM S. DEVERY

" WILLIAM S. DEVERY, *President.*"

Once ratified, the memorandum became effective and is to be read in connection with the principal agreement. Problems arose, fairly summarized in a letter of February 9, 1938, by the association to the union. They were taken up and discussed by the appropriate committees of the parties. After attempting in vain an adjustment, they agreed as to the necessity and advisability of arbitration. Following a conference on February seventeenth, the association in a letter to the union of February eighteenth requested arbitration on four specified issues, pursuant to section 9 of the (principal) contract and section 3 of the " supplemental agreement," and set a meeting for March eighteenth.

This meeting never took place, because for some reason which does not appear on the face of the exhibits the union officials, after dealing for months with the association, suddenly referred to its own members the question whether they desired the arbitration to proceed, and the latter, repudiating their officers' action, decided against holding one.

Respondents completely miss the point as to the " supplementary agreement." Petitioners seek arbitration, not on that, but on the principal original agreement, which plainly provides for it. To a demand that arbitration of some kind be had, there is and can be no defense, if the difference contemplated in the undisputed first contract is shown to have arisen. Examination of the correspondence and comparison of the opposing affidavits leave no doubt in that respect. The attempt to disprove the facts alleged by petitioners is feeble and carries no conviction, for the important allegations are scarcely contested. The disputes or many of them are of a serious nature and meet the description of " any difference " contained in the contract.

The objection that the disputes vary as between the different employers and their employees is without merit, for the petitioners point out many respects in which they are common to all. Cer-

tainly, it cannot have been the intention to deal only with matters listed in the instrument, important though some of them were, and all may have been. Surely, when the words " any difference," were used, the parties contemplated avoiding a return to the disastrous conditions from which they had recently escaped, by adjusting disputes which would be the more dangerous if common to several or all. The fact that the contract was the same in the case of each employer is a convincing answer to the respondents' present position.

That the necessity of dealing with the whole situation on broad lines was appreciated by the union, the memorandum of October fourth, ratified on December twenty-ninth, is strong evidence. It is also documentary proof that the union recognized the association as the representative agent of the employers, and intended thenceforth to adjust or arbitrate with it any differences with them. The subsequent dealings between the parties, which were through the association, supply the final and conclusive proof that the union recognized the association as a real party in interest with respect to any disputes arising under the principal contract.

This reasoning disposes of the other and technical claim that the association is not a proper party. (See Civ. Prac. Act, § 210.) It is asserted to have acted throughout in accordance with its by-laws and the authority conferred by its members, and in accordance with the powers conferred by its certificate of incorporation, and no evidence to the contrary is adduced.

The objection seems to be more deeply rooted. It consists in a disinclination first manifested after the memorandum to deal with organized employers, and a preference to arbitrate with individual carriers. This sentiment, in spite of specific promises and long negotiations, finally caused the officers of the union to cover themselves by canvassing some ten thousand members, who at this late stage were not entitled to be consulted. Responsibility in action does not permit such procedure. Those who deal with a union are justified in relying upon the word of its officers duly authorized and accredited under its by-laws and other rules of conduct. No doubt to take the original contract by itself and construe it narrowly, ignoring all that has transpired since its execution, would well serve the purpose of members, if any there be, who favor nagging and trouble-making tactics. Good faith and common sense require a more liberal estimate of the situation which existed immediately before arbitration was refused.

To cite authority that the courts have long recognized the advantages accruing to citizens from the arbitration of disputes over contracts would be a waste of time. A labor contract is to be

treated like any other, when it includes an agreement to arbitrate, and if a union ever can and should be held responsible for its undertakings, this is the case.

The right of employees, through their unions, to negotiate with employers — the right of collective bargaining — was fought for by workmen during many years, and its recognition and vindication are comparatively recent matters. Once achieved, such a right imports reciprocal obligation. Unions have learned that, when such bargains are broken by employers, the courts will come to the aid of the former, applying when necessary the most drastic remedies. The workman cannot expect to obtain or retain for himself a privilege which he does not concede to his employer — redress for violation or evasion of obligations, deliberately entered upon and evidenced in writing. The duty of scrupulous and responsible compliance with his solemn contracts is the price of success in enforcing his own rights. Where the promise is of conciliation through arbitration of an industrial dispute, there should be less difficulty in facing the burden that goes with responsibility, for he merely substitutes the jurisdiction of an impartial tribunal of his own selection for adjudication by a court. In the one case as in the other he has a fair chance to win. A long vision is in order. The union man cannot thrive on business disturbance. In any event, he has on this occasion chosen his course and must keep his word if he is to be respected by the public, upon whose favorable verdict in the last analysis he depends, especially when engaged in transporting the daily necessaries of an enormous population.

In passing upon the motion before me, I find that the respondent union neglected and evaded its duty to arbitrate, repudiated the contract made by its officials, and should be compelled to comply with its agreement in that regard.

Settle order.