In the Matter of the Petition of TRIBORO COACH CORPORATION and AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, LOCAL DIVISION 1104, Petitioners, Respondents, against NEW YORK STATE LABOR RELATIONS BOARD and Dr. JOHN P. BOLAND and Others, as Members of the New York State Labor Relations Board, Appellants.

Second Department, April 28, 1941.

*Henry Epstein, Solicitor-General [John J. Bennett, Jr., Attorney-General; Daniel Kornblum, Eugene Cotton* and *Harold Dublirer* with him on the brief], for the appellants.

*Samuel Seabury* [*George Trosk* with him on the brief], for the respondent Triboro Coach Corporation.

*Charlton Ogburn*, for the respondents Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America.

TAYLOR, J.   The review at Special Term was had under section 707 of the New York State Labor Relations Act (Labor Law, art. 20) (hereinafter called " act ").   In the last analysis the question presented, the answer to which is decisive, is whether a collective-bargaining contract between an employer (Triboro) and an American Federation of Labor local, called Amalgamated, had been terminated before an election by employees of Triboro was held at which a Congress of Industrial Organizations local asserts that it was chosen as bargaining representative of such employees.   It was provided in the Amalgamated contract, effective October 20, 1936, that its term should be for three years, that it should continue automatically for successive like terms " unless either party shall notify the other party, in writing by registered mail, at least ninety days before the expiration of the then current term, that the notifying party elects to terminate the contract at the expiration of the then current term."   No such letter couched in those or equivalent terms was ever sent by either party to the other.   On July 17, 1939, however, the secretary of Amalgamated sent a letter to the employer stating, " I am enclosing a copy of the new contract which L. Wickers [President of Local Division 1104] has asked me to send you   *   *   *;"   and also that a conference of all parties would be arranged.   The writing sent with the letter was in fact merely a proposed contract which after prolonged negotiations was duly executed November 14, 1939.   Although, upon plain principles, no statement of his views as to the meaning of that letter is, or can be, controlling, Wickers, thus president of the local, testified at a hearing before the Board that the letter and proposed contract were not sent pursuant to paragraph 11 of the old contract (relating to termination), and that " We did not terminate the contract."   He testified also that it was not the intention to continue the old contract " for another three years."   As matter of law, there was no termination of the (old) 1936 contract in the manner therein provided.   The record discloses no substantial, or, indeed, any evidence of such termination.   The parties in fact continued to operate under the old contract until the execution of the new one in which it was agreed that its provisions should supersede those of the old contract, and that " upon the execution of this present agreement the provisions of said

Memorandum of Collective Agreement [1936 contract] shall be inoperative and of no force and effect." On the application of the C. I. O. local, the Board, on October 30, 1939, issued a direction of election to determine by which local the employees here involved desired to be represented. After postponement, the election was held ten days after the new contract with Amalgamated was executed. The unfair labor practice (act, § 704) charged against the employer is that it executed the new contract in the face of the Board's direction of election. That action in law was not an unfair labor practice. Indeed, in vacating an earlier direction of an election in this matter, the Board correctly conceded that it had no power to direct an election if a collective-bargaining agreement conforming to the act is in existence. The new contract here involved does so conform.

Clearly it was not the intention of either party to the old contract to terminate it on October 20, 1939, and the intention of both sides was to continue it for so much of a renewed term, provided for in that contract, as might be devoted to negotiating and executing a new one. Even if it had been the intention in July, 1939, to effect the earlier termination, and there is no evidence thereof, that intention would have been of no effect, since the parties, by their conduct and their declarations in the new contract, would be deemed to have abandoned it. Mere intent means nothing. It may be changed, revoked or abandoned at any time before it is carried into effect. This is illustrated by the failure of a testator to carry out in his will a testamentary intent previously expressed. (*Frankenberger* v. *Schneller*, 258 N. Y. 270.) " ' Assent in the sense of the law is a matter of overt acts, not of inward unanimity in motives, design or the interpretation of words.' " (*Sokoloff* v. *National City Bank*, 239 N. Y. 158, 170.) When one signs a writing creating an obligation on his part, what he might have intended at the time of signing is immaterial; the overt act expresses his intent in a legal sense. (*Brown* v. *Champlin*, 66 N. Y. 214, 221.)

In our opinion it follows, as the learned court at Special Term held (22 N. Y. Supp. [2d] 1013), that the finding of the Board that the old contract was terminated on October 20, 1939, is without any support in the proofs before it. Hence the order appealed from is right in its several phases and should be affirmed, with fifty dollars costs and disbursements.

LAZANSKY, P. J., HAGARTY and JOHNSTON, JJ., concur; CLOSE, J., dissents and votes to reverse the order, to deny the application of respondents and to grant the cross-application of appellants, with opinion.

CLOSE, J. (dissenting). It must be conceded that if there is any substantial evidence in this record to support the finding of the Board to the effect that the 1936 contract expired on October 20, 1939, the courts are without power to set such finding aside. (New York State Labor Relations Act, § 707; *National Labor Relations Bd.* v. *Waterman Steamship Corp.*, 309 U. S. 206; *Matter of Stork Restaurant, Inc.*, v. *Boland*, 282 N. Y. 256, 267.) " The courts may not weigh the evidence or reject the choice made by the Board where the evidence is conflicting and room for choice exists." (LEHMAN, Ch. J., in *Matter of Stork Restaurant, Inc.*, v. *Boland, supra.*) In my opinion there exists substantial evidence in this record to support the finding of the Board that the Amalgamated on or prior to July 17, 1939, elected to terminate the 1936 contract. Its letter of July 17, 1939, states that it is inclosing a copy of " *the new contract.*" This language imports prior negotiations at least and might be construed as an agreement reached. In addition, the president of the Amalgamated testified that it was not the intention of the union to continue for another three years the old agreement as it existed. The Board could conclude from the wording of the letter, the testimony of this witness, and the fact that an automatic renewal of the old contract would be in direct conflict with the provisions of the constitution of the Amalgamated, that the intention of the union was to abrogate the old contract. Where the doing of an act is not disputed but its validity or effect depends upon the intent with which it was done, the person who did the act may testify as to what his intention was at the time. (*McKown* v. *Hunter*, 30 N. Y. 625; *Noonan* v. *Luther*, 206 id. 105.) It is true that a contrary inference could be drawn from other testimony but " room for choice " existed and the Board's finding should not be disturbed.

Nor do I believe that a labor contract in and of itself bars the selection of another bargaining agent during the lifetime of such contract. Such contracts are subject to the exercise of the police power of the State. (*Manigault* v. *Springs*, 199 U. S. 473.) There is no valid reason why employees should be barred from selecting another bargaining agent, even though such employees might be bound by the contract entered into by the rejected bargaining agent. Labor unions, as such, have no vested interest in agreements determining conditions of employment of its members. If a majority of such members determine to select a different union to act as their bargaining agent, they are free to do so, subject to reasonable rules of the State Labor Relations Board.

The order should be reversed, the application of the respondents denied and the cross-application of the appellants granted.

Order affirmed, with fifty dollars costs and disbursements.