Thomas Dickers, J.
Plaintiff lias instituted this lawsuit to obtain a declaratory judgment.
The subject matter involved is his claim of a right to pension as a good-standing member of defendant, the Newspaper and Mail Deliverers’ Union, an unincorporated association.
It was stipulated at the trial that plaintiff was such a member for more than 25 years; that while such a member, he worked for one day a week as “ loader ” and “ carrier ” in the newspaper industry either on Saturday night or on Sunday night, and worked also on a full-time schedule as a civil service employee of the United States post office during the rest of the week; that he paid the same amount of prescribed dues as any other member of the union; and that with the passing of time, he advanced in membership seniority.
There is no denial of the fact, as testified by plaintiff, that he, plaintiff, let his post-office affiliation be known to those who asked him, including officers of the union, among whom was the named individual defendant, sued herein as president of the union.
There is no dispute that throughout the years of his continuous membership in good standing (actually 29 years), plaintiff took part in union activities, such as attending meetings, voting for the election of officers, and joining in strike and picket duties,— duties which were mandatory for compliance, in order to avoid disciplinary action.
There is also no dispute that to be eligible to work the one day of the week, plaintiff had to become a member of the union.
*10 Also undisputed is the fact that a substantial part of plaintiff’s dues went into the welfare and pension account of the union, as required by section 3 of article XV of the constitution.
The union’s cardinal reasons, at this time, for resisting approval of plaintiff’s application for pension, comprise, in effect, the following: (1) That the employment of plaintiff for one day of each week, instead of for a full time of five days of each week, makes him, in the terminology of the union, a 1 ‘ casual ’ ’ employee, so that he is not the type of employee qualified to be considered as being included within the category of employees “actively engaged in the craft,” in the sense which this phrase, as embodied in the constitution of the union, is intended; (2) that the constitution does not create an enforcible right of contract, but merely vests the executive council with discretionary power either to grant or to deny the application for pension; (3) that the depletion of the pension fund, is valid reason to warrant a denial of the application in the exercise of reasonable discretion within the implication of the framework of the constitution; and (4) that, in any event, the union’s assumed custom and practice of exercising its prerogative either to pay or not to pay pensions, ought to hold sway in this litigation.
Section 1 of article XVI of the constitution, is the provision that has provoked the dominant kernel of contention, centered in the phrase, “ actively engaged in the craft.” The presently concerned part of this article reads as follows: ‘ ‘ Any member in good standing may make application and be eligible to receive benefits under the Pension Fund of this Union who has been in continuous active membership for 25 years immediately preceding such application and who has been and still is actively engaged in the craft.during such time.” (Italics supplied.)
With the issues boiled down as a result of the foregoing stipulation between the parties and also as a result of the aforestated undisputed facts, the interpretation of the phrase, “ actively engaged in the craft,” now remains as the key and only dispositive issue for adjudication.
Right here, reference to a few general legal landmarks reflecting on this issue, may speak volumes and prove materially helpful to an eventual solution of the nature and the extent of the relationship between plaintiff and the union, by virtue of the constitution and by-laws.
The constitution and by-laws of a union constitute a binding contract defining the relation of the union and its members, and the rights of the members (Fritsch v. Rarback, 199 Misc. 356), unless contrary to law or against public policy. (Ames v. *11 Dubinsky, 70 N. Y. S. 2d 706.) A labor contract is not exempt from the operation of the law of contracts, which applies to all agreements (Matter of Triboro Coach Corp. v. New York State Labor Relations Bd., 22 N. Y. S. 2d 1013, affd. 261 App. Div. 636, affd. 286 N. Y. 314) and the fact that one of the parties is a labor union, does not change legal principles relative to contracts. (Greater City Master Plumbers Assn. v. Kahme, 6 N. Y. S. 2d 589, 591.)
It follows, therefrom, that general rules of construction appertaining to contracts, are applicable.
Good faith and fair dealing are required of all parties to a contract. (Felman v. Fur Dressers’ Union, Local No. 2, 27 N. Y. S. 2d 27, 30, revd. on other grounds 29 N. Y. S. 2d 174.) In every contract there is an implied covenant of fair dealing. (Mutual Life Ins. Co. of N. Y. v. Tailored Woman, 309 N. Y. 248, 254.) Where one in good faith has acted upon an agreement, the other party may not repudiate it. (People ex rel. Swasing v. Perkins Adoption Soc., 163 Misc. 719, affd. 251 App. Div. 868.) The obligation of good faith and fair dealing calls for fulfillment, without searching for excuses, however plausible they may be, for nonperformance. (Downey v. Shipston, 206 App. Div. 55.) Contracts are made to be enforced, not to be broken at the whim or caprice of a party thereto. (Greater City Master Plumbers Assn. v. Kahme, supra, p. 591.) A court is not at liberty to inject a clause into a contract (Taylor v. United States Cas. Co., 269 N. Y. 360, 364), or to make a new contract for parties, but will, where justice and expediency demand, infuse the contract with the spirt of good faith and fair dealing to justify the implication of a covenant which will prevent one party from impairing the right of the other party to receive the fruits of the contract. (Price v. Spielman Motor Sales Co., 261 App. Div. 626; Luts v. Bayberry Huntington, Inc., 148 N. Y. S. 2d 762.) Good faith in the interpretation of a contract means the shunning of “ ‘ subterfuges, quibbles, and political shuffling ’ ” and the words are taken fairly as they are meant. (Hilleary v. Skookum Root Hair Grower Co., 4 Misc. 127, 130.) Common sense and good faith are the “‘leading-stars ’ ” of all genuine interpretation. (Hilleary v. Skookum Root Hair Grower Co., supra, p. 130.)
Those dealing with a union are justified in relying upon the word of its officers duly authorized and accredited under its bylaws and other rules of conduct. (Matter of Amsterdam Dispatch v. Devery, 168 Misc. 478.) A labor agreement is for the mutual benefit of the parties. (Mencher v. Weiss, 306 N. Y. 1, 8.) A party has no right to induce another to contract with *12 him on the supposition that his words mean one thing while he hopes that a court will adopt a construction by which the same words will mean another, more to his advantage. (Bintz v. City of Hornell, 268 App. Div. 742, affd. 295 N. Y. 628.) On the contrary, under the rule that he. who draws a contract and offers it should have any ambiguity resolved against him, a construction more beneficial to the promisee will be adopted. (Taylor v. United States Cas. Co., 269 N. Y. 360, 364, supra.) A construction placing one of the parties at the mercy of the other is avoided, particularly where the contract is prepared by the latter seeking the benefit of its construction. (Price v. Spielman Motor Sales Co., 261 App. Div. 626, supra.) Contracts are to be construed so as not to reach a result which the parties could not have contemplated; hardship and injustice are not deemed to be intended. (Pioneer Credit Corp. v. San Miguel, 275 App. Div. 636.) No one will be suffered to take advantage of “ ‘ adroit and slippery ’ ” language. (Hilleary v. Skookum Root Hair Grower Co., 4 Misc. 127, 131, supra.) A contract has nothing to do with the personal or the individual intent of the parties. (Mencher v. Weiss, 306 N. Y. 1, 7, supra.) The intention of the parties is found in the language used. (Heller S Henretig v. 3620-168th St., 302 N. Y. 326; Porter v. Commercial Cas. Ins. Co., 292 N. Y. 176, 183.)
With this composite summary of the law on the construction of contracts in general, forming an illuminating background for guidance, I am now ready to proceed with the discussion of the dominant kernel of contention, that is, the phrase in conflicting dispute, “ actively engaged in the craft.”
There is no question that each of plaintiff’s dual type of work as “loader” and “carrier,” is separately listed among the approved crafts under section 2 of article II of the constitution. Consequently, plaintiff’s employment falls within the meaning of the language ‘6 engaged in the craft ’ ’, as defined in this provision. Left, therefore, for determination, is only the construction of what will prove decisive of this litigation, to wit, the word “ actively.”
The absence of a controlling definition in the constitution regarding the word “actively,” necessitates, in the first instance, resort to other means for supplying some sort of appropriate definition to start with.
According to Webster’s New Twentieth Century Dictionary (Unabridged, 1949 ed.), the adverb “actively” is revealed therein to have several meanings. Of these, the closest ones tending to apply here, are: “ In an active manner; by action. ’ ’
*13 Beading in its entirety the context of section 1 of article XVI in question and considering such context in the light of the other provisions of the constitution, I conclude, with the aid of Webster’s definition and with the aid of the subsequent judicial rules of construction on the subject, that the use in the constitution of the bald word “ actively,” unqualified and unmodified, contemplates not a distributive, but a comprehensive, connotation, that is, a general, all-inclusive, solid state of action, without disruption by any limitation or restriction or numerical qualification of its descriptive import, in the absence of direct language indicating an intent to vary it in the manner of any one of the instances just stated. Consequently, the element of time, whether a day, a week, or any other specified period of time, amounts to no more than an incidental or an uninfluential matter, and, such element of time, just as well as any other incidental or uninfluential matter within its scope, unless expressed, is to be considered inclusively merged and made imperceptible within its comprehensive meaning.
To say differently in the circumstances, is to call for the adoption of any one of such unexpressed variances by implication, arbitrarily prompted by recruited fancies of the mind. Simple and unambiguous, this common word “actively,” as used here, in reality needs neither legal analysis nor extraneous explanation, for clarification. I feel that its general purport is too clear and too obvious to be questioned with serious legal effect. (Cf. Golden State Theatre & Realty Corp. v. Johnson, 21 Cal. 2d 493, 494 et seq.; Carson Estate Co. v. McColgan, 130 P. 2d 202, 208 [Cal.] ; Colantonio v. Equitable Life Assur. Soc., 100 N. E. 2d 716, 719 [Ohio]; Simson v. Bugman, 45 N. Y. S. 2d 140.)
Singularly, lending impressive weight to this trend of reasoning, is the comparative wording, numerically, of subdivision “ d ” of the same article XVI, with respect to the element of time. Notably, in strong contrast, this subdivision provides special employment for a designated class of pensioners. For this, the language sets a specific time of work. It is a maximum of two days to two nights in a month. Then, after making certain that dues-paying members, however, receive their employment before these pensioners can be considered for this special employment, the language again sets a time of work. In this instance, it is a full week of five days or five nights. (Italics supplied.) Yet, oddly enough, in this same section, no mention is made of numerical language which would tend to indicate that the term ‘ ‘ actively ’ ’ therein, is not meant to *14 be employed in its normal and usual all-inclusive tenor, but instead, is meant to be employed in the restrictive sense as contended, that is, solely for the benefit of those employees working on a full-time schedule of five days in each week.
This distinction in the employment of numerical phraseology in the one case, and in its nonemployment in the other, carries marked significance, it seems to me, when it is borne in mind that, as a major life force in the affairs of the union, the ostensible importance of article XVT, in its reference to the subject of employees “ actively ” engaged, would have been, when that provision was written, a highly impelling incentive for providing restriction on pension-rights in the matter of workers employed for less than full time, if such had been thought to be feasibly necessary or desirable. From its omission or exclusion, I deduce that, in all likelihood, the original compilers and the original scriveners, and those, if any, who followed, including those who dealt with the revision of the constitution and by-laws in September, 1952, intended that the word “ actively ” should include all workers, whether employed on full time or on less time. If the intention had been otherwise, even as late as the year 1952, then it would have been a simple matter to say so.
Other significant provisions make this course of reasoning still more impressive.
Section 7 of article III prohibits membership in any other union; section 13 of article III grants eligibility for membership to all workers in the crafts; sections 1 and 2 of article XI declare a priority for assignment of work in the order of length of service; and section 1 of article XVIII prohibits the holding of more than one full-salaried job at one time. But, it is to be noted that nowhere in these provisions, is it indicated that full-time employment, or any other time of employment, is intended to have any bearing upon the privileges and the prohibitions contained therein.
Manifestly then, it may be decidedly said, in short, that membership, with its attending rights and obligations, rests upon an equal footing for all workers of the union, whether they are employed on full time or on less time, and, emphatically so, in the absence of any expression in the constitution declaring differently.
For juridical support of my point of view regarding the intended use of this common word “ actively,” I find the law to be that in construing instruments, the presumption favors comprehensive over restricted, general over particular, and common over unusual, sense of words. (Auerbach v. Mr. & Mrs. *15 Foster’s Place, 128 Misc. 875, 877.) A firm maxim in the law is that the greater includes the less. (Rudolph v. Rudolph, 12 N. Y. S. 81, 83.) In construing a contract, there is no magic in particular words. (Bintz v. City of Hornell, 268 App. Div. 742, supra.) Express words cannot be contradicted by implication. (Sabl v. Laenderbank Wien, AG., 30 N. Y. S. 2d 608.)
All by-laws must be reasonable. (People ex rel. Meads v. Alpha Lodge, No. 1,13 Misc. 677, affd. 8 App. Div. 591.) Where the by-laws appear definite and certain, the omission of a certain matter cannot be supplied either by implication or by the opinion of the officers. (Brendon v. Worley, 8 Misc. 253.)
In the absence of any provision or of other means in the constitution, defining or indicating or dealing, in some reasonable way, with discretionary power, I am disposed to reject the unsupported argument that the union in any event could exercise unbounded discretionary power to decide whether to pay or not to pay pensions. This I do with the somewhat authoritative observation that arbitrary refusal of benefits is not approved where the retirement plan is not merely a benefaction but a contract, supported by the employee’s consideration of continued service under the plan and by his acceptance of other obligations (Gearns v. Commercial Cable Co., 177 Misc. 1047, affd. 266 App. Div. 315, affd. 293 N. Y. 105), especially when the exercise of such discretion is in derogation of a long course of conduct of the parties. (Marlton Operating Corp. v. Local Textile Mills, 137 N. Y. S. 2d 438.) Even a judge’s or any other public officer’s power of discretion, is not unlimited but is required to be exercised justly and properly. (Matter of Bond, 251 App. Div. 651; Calzaretta v. Mulrain, 131 N. Y. S. 2d 76.)
The word 1 ‘ may ’ ’ in the same section 1 of article XVI, urged by the union in emphatic support of the contention relative to its right to exercise discretionary power, I construe in its primary and most common use. I construe it to mean “ giving permission to perform the act referred to.” (Cf. Williams v. People, 24 N. Y. 405, 409; Brown v. Manufacturers Trust Co., 278 N. Y. 317, 324.) In other words, the use of “ may,” I hold, is exclusively for the benefit of potential pensioners, or, to say it in another way, the making of an application for pension with the right to receive it, or, in the alternative, the making of a choice to continue working (for this alternative seems to be the reasonable construction), is, in either instance, optional or volitional with potential pensioners, and is not dependent upon the mood of the union officials.
*16 The full impact of the foregoing discussion bearing on defendant’s contentions “1” and “2,” leads to this: The courts, looking to the substance of things rather than to the form (Whitehead v. O’Sullivan, 12 Misc. 577) and declaring that common sense is the basis of all just law (Clark v. Gilbert, 26 N. Y. 279, 284), are not prone to turn a bilateral contract into one binding upon one party only. (Brooklyn Bus Corp. v. City of New York, 274 N. Y. 140, 146.) The doctrine that it is not just that one party should be bound when the other is not, is well established. (Village of Ft. Edward v. Fish, 33 N. Y. S. 784, 786, affd. 156 N. Y. 363.)
Moreover, regardless of the construction placed upon the constitution and by-laws, it appears that the sympathetic attitude of the law towards a person in plaintiff’s innocent predicament, provides him, as such person, with two derivative protective measures in the form of established legal concepts, to wit, equitable estoppel and unjust enrichment, as preventives against the union’s taking advantage of him, and thereby making him pay the piper for something not of his doing.
Having over 25 years, or to be more exact, having for 29 years, accepted plaintiff’s dues, in part turned over to the pension fund, as heretofore pointed out, and having permitted plaintiff to participate in the affairs of the union on a par with all the other members and to attain membership seniority, — - all in silence during this period of time, and with the full knowledge that he worked in the industry only for one day on either Saturday night or Sunday night and for the rest of the week in the post office — the union, I believe, is, in its present position of delinquency or indifference, estopped, as a matter of ethics, from repudiating its contract after plaintiff, by reason thereof, acted in good faith thereupon, and after he, as an outcome therefrom, acquired a claimed right. (Morrill Realty Corp. v. Rayon Holding Corp., 254 N. Y. 268, 275; Guild v. Hopkins, 271 App. Div. 234, affd. 297 N. Y. 477.) In such situation, I am moved to remark that the union falls within the axiom that ‘“lie who has been silent when in conscience he ought to have spoken shall be debarred from speaking when conscience requires him to be silent.’” (Hamlin v. Sears, 82 N. Y. 327, 332.) (See, also, Ralli v. White, 21 Misc. 285.) Then again, a party who retains the benefits of a contract, should not be permitted to avoid its obligations. (Kirsch v. Quality Fruit Wines Corp., 68 N. Y. S. 2d 120; Mencher v. Weiss, 306 N. Y. 1, 9, supra.) He should not be allowed to enrich himself unjustly at the expense of another. (Iorio v. Century Fed. *17 Sav. & Loan Assn., 127 N. Y. S. 2d 299; Baker v. Baker, 187 Misc. 309.)
The contention that the depletion of funds justifies the exercise of discretion as a reasonable measure for nonpayment of pensions, is of no moment. The fact that a contract, made under normal circumstances, may subsequently prove unprofitable or onerous or costly, is no adequate excuse or justification for nonperformance. (City of New York v. Interborough R. T. Co., 136 Misc. 569, affd. 232 App. Div. 233, affd. 257 N. Y. 20; Gordon v. State of New York, 233 N. Y. 1, 7; Downey v. Shipston, 206 App. Div. 55, supra.)
The further contention that the custom and practice of the union as to payment or nonpayment should prevail, considering, as I do, that the provision under scrutiny is unambiguous, is also rejected. Custom and usage, or as denominated by the union, practice, have been held not to affect the written constitution and by-laws of an unincorporated association or trade union. (Fritsch v. Rarback, 199 Misc. 356, supra.) More so, I stress, when no ambiguity is involved.
To sustain the position of the union would result in an unfair advantage, at this eleventh hour, to the forfeiture of deserving justice for plaintiff. For, after all, the giving or the administering of justice, is the object or the end of the law. (Wilke v. People, 53 N. Y. 525, 527.)
The union assumed the risk incident to the performance of its contract due in no fault to the act of plaintiff. (Gordon v. State of New York, supra, p. 7.) It follows that no legal reason now exists for depriving plaintiff of his right to pension — a right which is, at this stage, a property right arising out of his contractual relationship with the union, and a right over which the courts will not hesitate to intercede, in order to preserve and enforce it. (Felman v. Fur Dressers’ Union, Local No. 2, 27 N. Y. S. 2d 27, supra; Blek v. Kirkman, 148 Misc. 522.)
That the union may have entered into a bad bargain, is unfortunate. But, as any other litigant in a similar position, it should be held to performance. (Greater City Master Plumbers Assn. v. Kahme, 6 N. Y. S. 2d 589, 591, supra.) It is not the province of the law to relieve it from the improvidence of its own acts. (Tompkins v. Dudley, 25 N. Y. 272, 276, 277.)
The union’s apparent dissatisfaction with a term of its bargain willingly entered into, is an insufficient reason for the violation of that term. (Greater City Master Plumbers Assn. v. Kahme, supra, p. 591.) If the parties to a contract adopt *18 a provision which contravenes no principle of public policy and contains no element of ambiguity, the courts have no right to relieve one of them from disadvantageous terms which he has actually made, by a process of interpretation. (Rosenthal v. American Bonding Co., 207 N. Y. 162, 168.)
Pasternack v. Diamond (3 A D 2d 422), upon which the union greatly relies to uphold the finality of its decision, has no application here for three cogent reasons: First, a forfeiture of rights was the subject; second, a purely factual question thereof was involved; and third, a provision in the agreement made the board of trustees ’ decision final and binding.
At bar, the situation is entirely different, for three converse reasons: First, forfeiture is not an issue; second, a plain and clear issue concerning the construction of the unambiguous word ‘ ‘ actively, ’1 is presented for determination as the outcome of the stipulated facts and of the undisputed facts, so that, in such instance, no question of construction is left except for the court (Brainard v. New York Cent. R. R. Co., 242 N. Y. 125; Heller Henretig v. 3620-168th St., 302 N. Y. 326, supra); and third, finality of decision is nowhere shown to be declared in any provision of the constitution. And, besides, here plaintiff acquired a claimed right. (Morrill Realty Corp. v. Rayon Holding Corp., 254 N. Y. 268, supra.)
In my opinion, therefore, plaintiff has sustained his cause of action, and accordingly, is entitled to judgment. I direct, by reason thereof, that judgment be entered in favor of plaintiff.
This case was tried without a jury. Findings of fact and conclusion of law, ordinarily required by sections 439 and 440 of the Civil Practice Act, were, by stipulation of the respective parties, waived on the record.
All motions made in the course of the trial remaining undisposed of, are hereby denied.
Thirty days ’ stay; 60 days to make a case, if necessary.
Judgment is accordingly directed for plaintiff. Settle judgment.