Thomas Dickens, J.
The purport of this ad interim injunction proceeding is to effectuate a checkmate of a written notice sent by defendant to plaintiff, in which the former had brought to a termination, by a date specified, the provisional and probationary status of the latter as a participant in the former’s Blue Cross Plan, such participation having been acquired by the latter as the result of a compact between the parties.
Under that compact, plaintiff had become affiliated with defendant in December, 1963 as a member invested with the probationary and provisional status, mentioned heretofore. Renewals, approved by defendant’s board of directors, were then enacted, one on June 24, 1964, and another on September 23, 1964. Each time when the provisional status was renewed, as *219 noted, the board had, as a continued condition, adopted a resolution prohibiting plaintiff from constructing or expanding. (See latest resolution that immediately follows.)
The latest resolution of the board, as adopted on September 23,1964, reads as follows:
“resolved, that the authorization by the Board at its last meeting for the appointment of a subcommittee to review the situation at Bayview General Hospital be continued, and
1 ‘ further resolved, that in the interim the participating agreement with Bayview General Hospital be continued on a probationary and provisional basis until December 31,1964, subject to immediate termination in the event that the hospital should take any steps or make any commitments toward the construction or expansion or should withdraw its temporary assurances that no such steps shall Toe taken or commitments made.” (Emphasis supplied.)
Despite the assumption of the conventional obligations under the commutative agreement, with its rootstock in the resolutions, plaintiff soon ignored the prohibitive term of the agreement and started construction work on September 30, 1964. The consequence: the notice of termination afore-mentioned.
As a sign of vindication for the arbitrary step it took in derogation of the restriction against expanding structurally, plaintiff indicates, by the precariously artificial argument it now advances, that the commonweal transcends in importance and in preference even the integrity of a contract. This impression I gather from plaintiff’s vigorous pushing of the point that service to the public, together with regard for the public need, is paramount. This kind of incogitable theme seems to form the basic theory of plaintiff’s present move. By plaintiff’s ex parte act, aided by this proceeding, it is quite evident that plaintiff hopes to submerge or convert the feasance of the restrictive term against building, into practically a state of nudum pactum.
However, the case law does not-tone in with such a farfetched doctrine. This doctrine, when made to run the gamut of pertinent legal landmarks, finds itself revealed as fanciful and unsound, and consequently, the law rejects it.
Contracts take their law from the agreement. (Ballentine, Law Dictionary [English Trans.], pp. 282, 925.) The terms and the conditions, of a contract have the force of law over those who are parties to it. (Maas v. McEntegart, 21 Misc. 462, 465.) It is a well-settled rule of law that a party must fulfill his contractual obligations whether onerous or unprofitable, for the parties to a contract are presumed to act with their eyes open, more so when the circumstances show, as is the case here, that a contract *220 is without ambiguity; that it bears sufficient consideration; and that it lacks the taint or the suggestion of fraud, mistake, or duress. (Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377, 381; Gordon v. State of New York, 233 N. Y. 1, 7; Lowe v. Feldman, 11 Misc 2d 8, affd. 6 A D 2d 684; Cornell v. Dakin, 38 N. Y. 253, 258.)
There is no dispute about plaintiff’s being well aware of the conditions of nonexpansion as interdicted by defendant’s renewed resolutions. Consequently, good faith and fair dealing should, as required by the law, have been plaintiff’s legal semaphore. (Lowe v. Feldman, supra.)
Where a person absolutely contracts to do a certain thing not impossible or unlawful at the time, he will not be excused from the obligation of the contract unless the performance is made unlawful, or is prevented by the other party. Neither inevitable accident, nor even those events denominated acts of Grod, will excuse him, and the reason is that he might have provided against them by contract. (Ressler v. Druck, 40 Misc 2d 654.)
A court cannot inject a clause into a contract nor make a new contract for the parties, but will, where justice and expediency demand, infuse the contract with the spirit of good faith and fair dealing to justify the implication of a covenant that prevents one party from impairing the right of the other to receive the fruits of the contract. (Lowe v. Feldman, supra.) In other words, the court must construe the contract as it finds it. (Dwight v. Germania Life Ins. Co., 103 N. Y. 341; Guccione v. Scott, 21 Misc. 410, affd. 33 App. Div. 214.) It is not the province of the law to relieve a contracting party from the improvidence of his own acts. (Lowe v. Feldman, supra; Tompkins v. Dudley, 25 N. Y. 272, 276.)
The courts do not grant or deny civil rights upon a balancing of expediences. The application is denied or granted upon the facts properly before the court, that is, upon the pleadings and the proofs of the parties. Justice should not be denied upon the notion that the public good may be promoted by its temporary refusal to proceed according to law. (World of Food v. New York World’s Fair 1964-1965 Gorp., 42 Misc 2d 392.)
The chimerical issue of commonweal, therefore, has no rightful place in this controversy.
Evidently finding itself confronted with an iron-clad convention, plaintiff resorts to this allegation (No. 18) in its complaint:
‘ ‘ Bay view has performed all conditions on its part required to be performed with respect to the maintenance and operation of the hospital and its agreement with Blue Cross, except that construction on new facilities has been commenced by Albro Realty *221 Company, Inc., which construction does not prejudice the rights of Blue Cross, nor in any manner affect the operation of the hospital.” (Emphasis supplied.)
This exception, whether intended by plaintiff as an excuse for nonperformance or as a modification by its own arbitrary choice, needs no argument to demonstrate, as a matter of law, the utter deficiency of the pleading (assuming that this exception would have had value as substance if properly presented), because of its conclusory form. (Cf. Werblud v. Mehadrin Dairy Corp., 11 Misc 2d 167.) Furthermore, as an inanimate witness, in itself, the allegation substantiates the breach of the agreement, in total disregard, of defendant’s rights; and finally, by this admitted breach, plaintiff is revealed as having committed a wrong, and a wrong, or an unfavorable condition created by a party’s own fault, cannot form the basis for relief (Carr v. Hoy, 2 N Y 2d 185; Schoenholz v. New York Life Ins. Co., 234 N. Y. 24, 30; McKay v. Syracuse R. T. Ry. Co., 208 N. Y. 359, 363), for the taking advantage of one’s own wrong, is abhorrant to equity. (Cornwell v. Clement, 87 Hun 50, 53.)
The following sequel to the foregoing review puts a full damper on plaintiff’s chances for an injunction, because (1) an injunction pendente lite does not issue unless made on a clear legal right fortified by undisputed facts (Kolts v. 97 Columbia Hgts. Realty Corp., 6 Misc 2d 840; Jaymar’s, Inc. v. Schwarts, 37 Misc 2d 314); because (2) where a plaintiff is not entitled to an injunction on the pleadings as a matter of law or where the allegations of the complaint are positively denied in the answer, the general rule is that an injunction pending the litigation will not be continued (Hessler v. Schafer, 82 Hun 199, 201 [Gen. Term]); because (3) a party seeking an injunction pendente lite has the burden of establishing the undisputed right to such relief, and even then, relief must not depend upon an issue which can be decided on a trial (Empire Boxboard Corp. v. Active Paper Box Co., 115 N. Y. S. 2d 14; Hessler v. Schafer, supra); because (4) equity may compel parties to execute their agreements, but has no power to make agreements for them, or to substitute one for another. (Bingham v. Weiderwax, 1 N. Y. 509, 513; Guccione v. Scott, 21 Misc. 410, affd. 33 App. Div. 214, supra.)
Now, proceeding on the maxim that man’s own acts shall be taken most strongly against himself (Wharton’s Legal Maxims, No. 18, p. 297), for man’s acts speak louder than words and often render subsequent explanations unsatisfactory (Warren v. Warren, 8 Mise. 189, 192), my term of thought from my conclusive point of vision is that plaintiff, having acted in a manner *222 diametrically opposed to the terms and conditions under which plaintiff was temporarily included in the Blue Cross Plan of defendant — a wrong of plaintiff’s own making to its detriment (Wharton’s, supra) — is not at the present time in any legal position to complain of the action taken by defendant in refusing to continue plaintiff as a participant on a temporary basis. Accordingly, I see no escape from the conviction that there is no virtue in plaintiff’s claim to a right when plaintiff wronged. “A right cannot spring from a wrong.” (Ballentine, Law Dictionary [English Trans.], p. 712. See, also, Ray Kline, Inc. v. Davega-City Radio, 168 Misc. 185.)
The application is denied and the stay pendente lite is dissolved.