Seymour Boyers, J.
These actions, consolidated solely for the purpose of the motion and cross motion for partial summary judgment herein essentially involve the claim of the plaintiff, Lodge No. 1894, International Association of Machinists and Aerospace Workers, AFL-CIO (hereinafter referred to as the “Union”) against three individual union members, Matthew McKiernan, John P. Carroll and Jose Antonio Colon (hereinafter referred to a “defendant-members”) for the collection of fines. The Union alleges that in accordance with its constitution and by-laws, it conducted hearings before its Union trial committees which determined that defendant-members had *433 engaged in conduct inimical to the welfare of the Union. It is further alleged that such conduct was contrary to the provisions of the Union’s constitution and by-laws thereby subjecting the defendant-members to “ a reprimand, fine, suspension or expulsion.” Fines were imposed in the amount of $3,000 as against two of the defendant-members and in the amount of $1,000 as against the third defendant-member which the defendant-members refused to pay.
Both the plaintiff Union and the defendant-members agree that the critical issues involved in this action are those of law, and are issues which should be determined by the court in deciding the instant motions. The salient issues raised by the motions herein are (1) whether the defendants’ membership in the plaintiff organization constituted a contractual relationship that would subject the defendant-members to the provisions of the Union’s constitution and by-laws; (2) whether the defendant-members had constitutionally protected rights to promote and support a rival union as the collective bargaining agent; (3) whether a $3,000 or $1,000 fine is unreasonable and improper as a matter of law; and (4) whether the Civil Court of the City of New York has the jurisdiction to entertain plaintiff’s action to enforce the collection of such fines.
The Union’s charge, against each of the three defendants, was that while members of the plaintiff Union, they supported, in varying fashion, a rival union to supplant the plaintiff as collective bargaining representative of the employees employed by National Airlines. The Union claimed that this action by the defendant-members was designed to undermine and impair the effectiveness of the Union as the collective bargaining representative of all union members and others whom it was required,by law to represent or, at the very least, had that effect.
The defendant-members contend that any “ membership ” that may have existed in the plaintiff Union was pursuant to a compulsory union shop provision. It is the defendants ’ position, therefore, that such involuntary membership is not a sufficient contractual basis to support a claim that an individual has waived his constitutional privileges of free speech and his statutory rights of freedom of organization.
Contract in labor law is a term the implications of which-must be determined from the connection in which it appears. (Case Co. v. Labor Bd., 321 U. S. 332.) The negotiations between union and management result in what often has been called a collective trade agreement, rather than a contract of employment. The employee becomes entitled by virtue of the National Labor Relations Act somewhat as a third-party beneficiary to *434 all benefits of the collective trade agreement. The employee’s relationship with the union is determined by the union’s constitution and by-laws. The constitution and by-laws of an unincorporated association such as plaintiff Union constitute a binding contract between the union and its members. (Fritsch v. Rarback, 199 Misc. 356; Lowe v. Feldman, 11 Misc 2d 8, affd. 6 AD 2d 684.)
In plaintiff’s memorandum in opposition to defendants’ motion references are made to defendants’ examination before trial, which are not rebutted in defendants’ reply affidavit, showing that the fined employees involved herein enjoyed full union membership. Furthermore, the union shop provision requiring membership support of their unions has been found appropriate by Congress and thus was not the concern of the judiciary. (Railway Employes’ Dept. v. Hanson, 351 U. S. 225.) The court will not presume that the defendants enjoyed other than full union membership.
National labor policy extinguishes the individual employee’s power to order his own relations with his employer and create a power vested in the chosen representative to act in the interests of all employees. “ Thus only the union may contract the employee’s terms and conditions of employment, and provisions for processing his grievances; * * * The employee may disagree with many of the union decisions but is bound by them. 1 The majority-rule concept is today unquestionably at the center of our federal labor policy.’ ‘The complete satisfaction of all who are represented is hardly to be expected. ’ ” (NLRB v. Allis-Chalmers Mfg. Co., 388 U. S. 175, 180.)
The court is further exhorted by the defendant-members to outrightly reject plaintiff’s action on the ground that to permit the union to collect the fines would abrogate a right paramount in our Constitution — that of freedom of expression under the First Amendment. But, as Justice Oliver Wendell Holmes aptly put it: “ All rights tend to declare themselves absolute to their logical extreme. Yet all in fact are limited by the neighborhood of principles of policy which are other than those on which the particular right is founded, and which become strong enough to hold their own when a certain point is reached.” (Hudson Water Co. v. McCarter, 209 U. S. 349, 355.)
Thus, the right to freely express the support of another union, sometimes called ‘ ‘ dual-unionism, ’ ’ is counterbalanced by the right of the union to protect itself from extinction. While it is essential to assure democratic conduct of union affairs and to protect the individual member’s rights to free expression, at some point, there must be a balancing of the *435 individual’s rights against the good of the group. This is particularly so where the individual’s conduct could have the effect of destroying the union to the detriment of its membership. The court finds this conduct to be decidedly different from the expression of dissatisfaction with the leadership of the union and the exertion of efforts within the framework of the Union to unseat the leadership. In the latter case, the activity within the Union to change the leadership is and should be protected conduct, whereas, the support and encouragement of a rival organization is a breach of duty and obligation to the membership of the Union and should not receive protection of the law. To hold otherwise would threaten the stability of the labor movement.
In NLRB v. Allis-Chalmers Mfg. Co. (supra.) Mr. Justice Brennan speaking for the majority of the court in effect stated that the union has the right to prescribe its own rule respecting acquisition or retention of membership, to impose fines, and to bring suit for their collection against members who violate the provisions of the union’s constitution and by-laws. The imposition of a fine and the court enforcement of same is within the ambit of internal union affairs and is a necessary consequence of the ‘ ‘ contract theory ’ ’ of the union member relationship provided that the fine is reasonable.
As to the reasonableness of the fine, the court will leave that determination to a trial court or jury as an issue of fact.
NLRB v. Allis-Chalmers Mfg. Co. (supra) held that uncollected fines could be recovered by suit in a civil court. This case provides cogent support on the issue of jurisdiction by the Civil Court of the City of New York to entertain the present action herein.