CONSTANTINE BALLAS, as President of Lodge No. 1894, International Association of Machinists & Aerospace Workers, AFL-CIO, Appellant, *v.* MATTHEW McKIERNAN, Respondent.

CONSTANTINE BALLAS, as President of Local Lodge 1894, International Association of Machinists & Aerospace Workers, AFL-CIO, Appellant, *v.* JOHN P. CARROLL, Respondent.

CONSTANTINE BALLAS, as President of Local Lodge 1894, International Association of Machinists & Aerospace Workers, AFL-CIO, Appellant, *v.* JOSE A. COLON, Respondent.

Second Department, March 19, 1973.

*Vladeck, Elias, Vladeck & Lewis* (*Judith P. Vladeck* of counsel), for appellant.

*Surrey, Karasik, Morse & Seham* (*Martin C. Seham, Fred C. Klein* and *Susan A. Powers* of counsel), for respondents.

MARTUSCELLO, J.   The question arising on this appeal is whether fines imposed by a labor union on members pursuant to its constitution are judicially enforceable.

The plaintiff union commenced separate actions in the Civil Court of the City of New York, Queens County, to recover fines which it had levied by its own internal processes against three of its members, the defendants.

The defendants are aircraft mechanics. Two of them are employed by National Airlines and the other by Eastern Airlines. Each defendant became a member of the plaintiff union by virtue of a union shop provision in the particular collective bargaining agreement in force between the union and his employer when he took such employment. The union shop provision applicable to defendants McKiernan and Carroll provided, as is authorized by the Railway Labor Act (U. S. Code, tit. 45, § 152, subd. Eleventh), that employees subject to its terms " shall, as a condition of their continued employment * * * become members of the Union within sixty (60) calendar employment days * * * and thereafter shall maintain membership in good standing in such Union." (The provision as to defendant Colon was essentially the same.)

All three defendants, though members of the plaintiff union, nevertheless became adherents of a rival union, Aircraft Mechanics Fraternal Association (AMFA). In July, 1967, they actively supported AMFA in an election in which AMFA sought to displace the plaintiff union as the bargaining representative of the aircraft mechanics employed by National Airlines.

The plaintiff union, however, won the election and thereafter some of its members filed charges against the defendants based on the defendants' activities in that election in favor of the rival union. After a trial they were found guilty of dual unionism and were fined sums ranging from $1,000 to $3,000. They refused to pay and thereupon the union instituted the actions to collect the fines imposed.

Following lengthy pretrial procedures, the defendants jointly moved for partial summary judgment and the union cross-moved for similar relief. The defendants' motion was denied. The union, however, was granted partial summary judgment, with the direction that the reasonableness of the fines be determined by the trial court as an issue of fact. In an opinion in support of its decision (*Ballas* v. *McKiernan,* 63 Misc 2d 432), the court stated its findings on the issues raised to be as follows:

(1) that the defendants were members of the union;

(2) that the union's constitution and by-laws constituted a binding contract between the union and its members;

(3) that the conduct for which the defendants were fined was not protected by the First Amendment to the Constitution of the United States; and

(4) that the court had jurisdiction over the actions to collect the fines.

The defendants appealed to the Appellate Term and that court reversed and dismissed the complaints, with the following memorandum: " It was unlawful for plaintiff union to impose a fine upon defendant-members for their activities described as dual unionism (Airline Maintenance Lodge 702, I. A. M. v. Loudermilk, C. A. Fifth Cir., 444 F. 2d 719) " (N. Y. L. J., Oct. 8, 1971, p. 20, col. 2).

A union's constitution and by-laws constitute a contract between the union and its members and define not only their relationship but also the privileges secured and the duties assumed by those who become members, unless contrary to public policy (*Fritsch* v. *Rarback,* 199 Misc. 356; *Lowe* v. *Feldman,* 11 Misc 2d 8, affd. 6 A D 2d 684). Here, the union's constitution defines improper conduct of members and sets forth those acts or omissions which constitute misconduct by a member and "which shall warrant a reprimand, fine, suspension and/or expulsion " (art. L, § 3). Specifically described as such misconduct is the " advocating or encouraging   *   *   *   any dual labor movement   *   *   *   or   *   *   *   giving support to   *   *   *   organizations inimical to the I.A.M. [the plaintiff union] or its established policies and laws " (*id.*).

It cannot be disputed that the defendants' conduct violated the union constitution. The significant issue, however, is whether or not the union had the right to fine the defendants for engaging in activities described as " dual unionism ".

*Airline Maintenance Lodge 702* v. *Loudermilk* (444 F. 2d 719), cited by the Appellate Term in its decision, involved an appeal from an order of a Federal District Court dismissing a union's action to collect a fine imposed upon a union member pursuant to the union's constitution. The defendant Loudermilk was an employee of Eastern Airlines. He became a member of the plaintiff union on August 28, 1959, by virtue of a union shop agreement between the union and his employer, requiring him, as a condition of his employment, to become a member of the union within 60 days after the commencement of such employment. In 1963 he joined and became president of a rival union, Aircraft Mechanics Fraternal Association (AMFA). In August of 1967 he actively supported AMFA in an election where it sought to displace the plaintiff union as the bargaining representative of mechanics working for National Airlines. AMFA lost the election to the plaintiff union.

As a result of his election activities in favor of the rival union, Loudermilk was tried by the trial committee of plaintiff union and was found guilty of dual unionism. He was fined $500 and refused to pay. Thereafter the union filed an action in a local court to collect the fine and Loudermilk had the action removed to the Federal District Court.

The District Court granted Loudermilk's motion for summary judgment, holding that although a validly imposed fine pursuant to a union constitution is judicially enforceable the fine involved was not validly imposed since the charge of dual unionism had arisen out of activities protected by the free speech provision of the Labor-Management Reporting and Disclosure Act of 1959 ([LMRDA], § 101, subd. [a], par. [2] [U. S. Code, tit. 29, § 411, subd. (a), par. (2); also known as the Landrum-Griffin Act]). That provision, so far as pertinent, is as follows:

" Bill of rights; constitution and bylaws of labor organizations

" (a) (1)   *   *   *

" (2) Freedom of speech and assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organizations his views, upon candidates in an election of the labor organization or upon any business properly before the meeting,

subject to the organization's established and reasonable rules pertaining to the conduct of meetings; *Provided*, that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.''

On appeal, the Court of Appeals, Fifth Circuit, affirmed. It held that it was clear from the terms of the above-quoted free speech provision of LMRDA that a union member has the right to free speech inside or outside of a union meeting, subject to the union's right to adopt and enforce reasonable rules as to the responsibility of every member toward the union as an institution. The court pointed out that *National Labor Relations Bd.* v. *International Molders & Allied Workers Union* (442 F. 2d 92 [7th Cir.]) had upheld a National Labor Relations Board decision that the union defendant in that case had violated the unfair labor practice provision of the National Labor Relations Act in imposing a fine on a member for circulating a petition to decertify the union. There, the court held that the fine was not a defensive measure for the union's protection, as expulsion would be, but punishment to discourage the exercise of the right of access to the board.

The Court of Appeals, Fifth Circuit, in *Loudermilk* concluded with the following rationale (444 F. 2d 719, 723–724, *supra*):

'' The rights of a union member under this statute must be balanced against the right preserved to the union to make rules as to the responsibility of the member toward the union as an institution, and this balancing process must rest on the facts. Loudermilk was compelled to join plaintiff union under the union shop agreement between Eastern and plaintiff IAM. Some years later he joined and became president of a rival union. He was fined for supporting the rival union, albeit in connection with displacing IAM at another airline. IAM did not choose to expel him or to bar him from meetings and the like, defensive actions which would have protected IAM. Rather, IAM sought to compel his allegiance by the imposition of a fine.

'' We think this exceeded the authority of the union under the circumstances here which involve compulsory membership under a union shop agreement coupled with the free speech overtones which are inherent in undertaking [*sic*] stemming from dissatisfaction with one union and action seeking to displace that union with another. As the district court said with respect to this factor: ' The Court has the responsibility of balancing the

defendant's individual interest against that of the union. If the plaintiff could impose a judicially collectible fine upon a union member who had become satisfied [*sic*] with the union's representation and sought to replace it with a rival, it could effectively eliminate all criticism of its policies and foreclose any challenge of its right to represent its members. I believe that such a result would be inconsistent with the intent of Congress at the time it passed the Bill of Rights.' "

The plaintiff union here argues that pronouncements of the Supreme Court of the United States in cases involving union fines are dispositive of the issue as to the union's right to impose the fines in question and that *Loudermilk* (*supra*), relied upon by the Appellate Term, is an unappealed Federal Court of Appeals decision incompatible with such pronouncements and should not be followed.

In support of its argument the union cites *National Labor Relations Bd.* v. *Allis-Chalmers Mfg. Co.* (388 U. S. 175). The issue there, as stated by the court in that case, was: " Whether a union which threatened and imposed fines, and brought suit for their collection, against members who crossed the union's picket line and went to work during an authorized strike against their employer, committed the unfair labor practice under section 8 (b)(1)(A) of the National Labor Relations Act of engaging in conduct ' to restrain or coerce ' employees in the exercise of their right guaranteed by § 7 to ' refrain from ' concerted activities " (p. 176). In that case it appeared that some members of a union which had called lawful economic strikes at two of the defendant's plants crossed the picket lines during the strikes. The union charged those members with violating its constitution and by-laws. After a trial the union fined the men various amounts. The defendant then filed unfair labor practice charges against the union. The Supreme Court held that the imposition of fines was within the power of the union. It noted that integral to the Federal labor policy of vesting unions with the power to order the relations of employees with their employer has been the power of the chosen union to protect against erosion its status under that policy through reasonable discipline of members who violate rules and regulations governing membership. Emphasizing that union disciplinary power is " particularly vital when the members engage in strikes," the court said, " The economic strike against the employer is the ultimate weapon in labor's arsenal for achieving agreement upon its terms, and ' the power to fine or expel strikebreakers is

essential if the union is to be an effective bargaining agent ' "
(p. 181).

In *Scofield* v. *National Labor Relations Bd.* (394 U. S. 423),
union members were fined and suspended by their union for
violating a union rule relating · to production ceilings. The
employer then brought charges for unfair labor practices. The
same basic issue that was raised in *Allis-Chalmers* (*supra*) was
also raised in *Scofield*. There, too, it was held not to be an
unfair labor practice to fine the members for violating the rule
regarding production ceilings. The court noted that the law
left a union free to enforce a properly adopted rule *which reflects
a legitimate union interest, impairs no policy Congress has
embedded in the labor laws and is reasonably enforced against
union members who are free to leave the union and escape the
rule.*

The court noted that, as in *Allis-Chalmers*, the union members
were subject to the discipline of an internal rule which
strengthened the union's hand in bargaining and in this respect
benefitted both the members who obeyed the rule and the non-
members who did not [at bar the situation is obviously different,
since it is a union shop and the defendants sought to organize and
promote a different union].

Clearly, *Loudermilk* (*supra*) is squarely in point with the
three cases at bar on the facts and should be followed unless it
was erroneously decided.

The gist of the appellant's argument is that *Allis-Chalmers*
and *Scofield* should control the cases at bar and that *Loudermilk*
is incompatible with the holdings in these cases.

I disagree with the appellant. It is clear that there are two
different situations and groupings of interests presented by the
Supreme Court cases and the *Loudermilk* case. Further, the
statutes involved in those cases were different. In both *Allis-
Chalmers* and *Scofield* the claims were that the unions had com-
mitted *unfair labor practices* in fining members for their acti-
vities. The unfair labor practices alleged were that the members
in *Allis-Chalmers* were compelled to strike or at least honor the
picket lines and that members in *Scofield* were compelled to
maintain and not exceed production quotas. In *Loudermilk*, on
the other hand, the claim was that the defendant member had
been *denied* the right of free speech and organization, which
was set forth in the Labor-Management Reporting and Dis-
closure Act and was the policy of this country, as a result of the
union's attempt to fine him under its internal procedures.

With respect to the interest involved in the cases a similar difference exists. In *Allis-Chalmers* and *Scofield* the activities of the members in question were harmful to the unions in their relationship with the employers. In one case it hurt the lawful strikes and in the other it affected production. Thus, the unions had lawful interests to protect and *those interests also protected the interests of the unions' members as employees of the companies in question.* In *Loudermilk* and in the cases at bar, however, the actions of the members in question did not directly affect the unions in their relations with the employers, *but rather affected the unions in their relations with their members and other unions.* Thus, while the interests of the workers and members as individual employees were not affected, the interests of the union as a viable institution were affected by the activities of Loudermilk. There is nothing to support a conclusion that Loudermilk's activity was detrimental to his co-workers.

In view of the fact that *Allis-Chalmers* and *Scofield* are factually different from *Loudermilk,* both as to the activities involved and the interests to be protected, I find that *Loudermilk* is not inconsistent with the Supreme Court cases. I agree with the reasoning in *Loudermilk,* as did the Appellate Term, and conclude that it should be followed. Accordingly, I hold that the fines involved were not validly imposed since the charge of dual unionism had arisen out of activities protected by the free speech provision of LMRDA.

The order of the Appellate Term should be affirmed, with $20 costs and disbursements to the respondents jointly.

HOPKINS, Acting P. J., MUNDER, GULOTTA and BENJAMIN, JJ., concur.

Order of the Appellate Term, Second and Eleventh Judicial Districts, entered October 13, 1971, affirmed, with $20 costs and disbursements to respondents jointly.