## Don HALSELL

### v.

## LOCAL UNION NO. 5, BRICKLAYERS & ALLIED CRAFTSMEN; Texas State Conference of the Bricklayers & Allied Craftsmen, and International Union of Bricklayers & Allied Craftsmen.

### No. CA 3–79–0927–C.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 28, 1982.

---

Stephen F. Fink, Thompson & Knight, Dallas, Tex., for plaintiff.

Steven B. Thorpe, Law Offices of James C. Barber, Dallas, Tex., for Local Union No. 5.

Wiley Doran, Mitchell & Doran, Houston, Tex., for Tex. State Conference.

L. N. D. Wells, Jr., Mullinax, Wells, Baab, Cloutman & Chapman, Dallas, Tex., for Intern. Union.

## OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiff seeks to protect rights afforded by our federal labor laws, specifically those contained in 29 U.S.C. § 411(a)(1), (2), (4) & (5).[1] Jurisdiction in this Court is founded upon 29 U.S.C. §§ 185(c) and 412.[2]

---

1. 29 U.S.C. § 411(a)(1), (2), (4) & (5) read:

(a)(1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) Freedom of speech and assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

(4) Protection of the right to sue.—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further,* That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

2. 29 U.S.C. § 185(c) reads:

Plaintiff is a member in good standing of Local Union No. 6, Bricklayers & Allied Craftsmen. Local 6's parent organizations are Defendants Texas Conference and International.

Though a union bricklayer, Plaintiff has not made his living by laying bricks for about 20 years. He is a brick contractor and Chief Executive Officer of the Brick Institute of Texas.

Apparently, Plaintiff hires only union bricklayers so he has not had difficulties because he is a brick contractor.

But his position as the head of the Brick Institute of Texas has created problems. The Brick Institute is a trade organization of brick manufacturers. It, of course, wishes to promote the sale and use of brick construction in the State of Texas, regardless of whether the layers are union or non-union.

In August, 1969, Plaintiff, who was then employed by the Brick Institute, got into a dispute with Bricklayers Union Local No. 9 in Waco, Texas, over the training of non-union bricklayer apprentices. This dispute was ultimately settled by the parties while suit was pending in Federal District Court in Waco.

This incident is important presently only because it goes to show that Plaintiff because of his position with the Brick Institute has had differences with his fellow union members for many years.

In the fall of 1977, Plaintiff was approached to help find a teacher for an apprenticeship class at Skyline High School, Dallas, Texas. Plaintiff agreed to help find a teacher and also agreed to fill in as the teacher (for pay) until a permanent instructor could be found. This apprenticeship class was sponsored by an association of open shop contractors.

On November 3, 1977, Mr. William R. Shrum, Business Manager of Defendant Local 5, observed Plaintiff at Skyline High School where he was teaching the open shop class. Mr. Shrum subsequently charged Plaintiff with a violation of Code 5, Code of International Offenses, Paragraph 1(s) of the Constitution of Defendant International. Code 5(1)(s) provides:

(1) It shall be an offense against the International Union:

. . . (s) For any member or affiliate to commit any act which is seriously detrimental to the interests of the International.

A trial was subsequently held on November 30, 1977, by Defendant Local No. 5. Just what happened at that trial is subject to dispute but is clear that Plaintiff admitted that he was teaching the open shop apprenticeship class on November 3, 1977. He was found guilty and fined $250. A tape recording of that trial was made but that tape was subsequently erased.

Plaintiff was formally notified of the guilty decision and the fine of $250 in a letter from Mr. Shrum dated December 1, 1977. Plaintiff then paid his fine under protest by a check dated December 15, 1977.

On December 23, 1977, Plaintiff sent a letter to Mr. Y. C. O'Glee, President of Defendant State Conference, that stated that the appeal procedures were not clear to him and asking for guidance. He received his answer in a letter from Mr. O'Glee, dated January 9, 1978, to the financial secretary of Bricklayers Local 6 which was also sent to Plaintiff. That letter informed Plaintiff that he had to pay his fine under protest and appeal within 30 days from his trial date. Though Plaintiff was past the 30-day mark, both Defendant State Conference and Defendant International accepted his appeals, in turn. It goes without saying since this suit was filed that his appeals were denied.

(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

As no appeal had been received within the 30-day period, Mr. Shrum had erased the tape before the appeal was filed. Defendant Local 5 has maintained throughout that Plaintiff never exhausted his union remedies because of his late appeal. This might have been a viable argument had not the other Defendants heard the appeals.

Plaintiff complains that his rights under 29 U.S.C. § 411(a)(5)(C) have been violated because he was not provided a transcript of his trial. Though it would be best if a transcript were available, there has been no showing of any fault on the part of any Defendant for the failure of Plaintiff to receive a transcript. If anything, the unavailability of a transcript was caused by Plaintiff's confusion as to appeal procedures which are set out in Code 6 of the Constitution of Defendant International.[3]

Plaintiff contends that that hearing was not "a full and fair hearing" as required by 29 U.S.C. § 411(a)(5)(C). There were substantial differences in the accounts of the Defendant Local 5 trial between Plaintiff and the witnesses presented by the Plaintiff. One of the chief complaints of Plaintiff is that Mr. Shrum was present at the trial. But Code 6(2)(f)(i) of Defendant International requires the presence of the charging party at a subsequent trial.

Plaintiff's real complaint about the conduct of the trial is the same complaint under 29 U.S.C. § 411(a)(5)(A) that he has about the written charge upon which he was tried and his complaint under 29 U.S.C. § 411(a)(2) that his Right of Free Speech has been violated by the Defendants.

Plaintiff has the view (which coincides with the Brick Institute's view) that anyone who shows an interest in bricklaying should be allowed to become a fully trained journeyman bricklayer. This, to say the least, is not the view of his co-unionists. As would seem natural, they believe that the number of bricklayers be limited to ensure full employment for the present bricklayers, whom they prefer to be union bricklayers. With this in mind, the position of Defendants has been and is that there should only be one apprentice for each three journeymen bricklayers. As a corollary of this, Defendants position is that apprenticeship programs should be run under the union's apprenticeship program so that the graduates will be (1) limited in number and (2) union members.

■ The testimony of Defendants witnesses was that union members are not allowed to teach apprenticeship classes that are not sanctioned by the union. Plaintiff disputed this by way of the example of a union member who was teaching a non-union sanctioned bricklaying class in a public high school. Defendants witnesses rebutted that this was not an apprenticeship class which qualified a person to be a bricklayer. This testimony was not substantially rebutted. So Plaintiff's equal rights challenge under 29 U.S.C. § 411(a)(1) must fail.

There was no testimony at the trial before this Court to the effect that this equal rights defense was presented by Plaintiff at Defendant Local 5's trial.

Apparently, when Plaintiff showed up for the union trial, he readily admitted that he had taught the apprenticeship class on November 3, 1977, that was sponsored by an association of open shop contractors and not by the union. There were vast differences in the testimony before the Court as to what then happened at the union trial. But all witnesses were in agreement that no further testimony was taken.

■ Now, we have come down to the rub in this case. Plaintiff contends that the written charge filed by Mr. Shrum should have spelled out just how his conduct was "seriously detrimental to the interests of the International," and that testimony should have been presented at his union trial which would show the serious detriment to the union. He also contends that

---

**3.** Code 6(3)(C)(i) provides:

A charged or charging party wishing to appeal must file a notice of appeal by registered or certified mail within 30 days from a trial body's or appellate body's written notice of decision. A copy of the notice of appeal shall be sent by registered or certified mail to the opposing party.

this provision of Defendant Union's Constitution is vague and overbroad. As the Fifth Circuit pointed out in *Davis v. Williams*, 617 F.2d 1100, 1103 (1980), cert. den. 449 U.S. 937, 101 S.Ct. 336, 66 L.Ed.2d 160, vagueness is a due process consideration and overbreadth is a first amendment ground consideration and they do overlap. In *Davis*, the Fifth Circuit found that a review of provisions such as "seriously detrimental to the interests of the International, supra," entails "meticulous analysis and balancing" which that Court preferred to leave to the Supreme Court.[4]

The Supreme Court spoke as to these matters quite clearly in *Boilermakers v. Hardeman*, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10. The Court said that it was up to the unions, not the Courts, to define the conduct which would lead to disciplinary conduct. In *Hardeman*, the Court approved a charge that specified the provision with which Mr. Hardeman was charged and a statement of the facts of the incident that led to the charge upon which Mr. Hardeman was tried. The Court found that this was all that 29 U.S.C. § 411(a)(5) requires.

Mr. Shrum's charge both recited the provision of Defendant International's Constitution which Shrum was charging Plaintiff had violated and the facts of the incident involved. So the charge was in accord with Federal law.

■ That leaves us with the question of what testimony had to be presented at Plaintiff's trial for a finding of guilt to be proper. Plaintiff maintains that explicit evidence that would tend to show that his teaching of an open shop apprenticeship class was "seriously detrimental" to the interests of Defendant International. Defendants demur. Here we are back to Plaintiff's long standing dispute with his co-unionists.

It is apparent from reading the Supreme Court's opinion in *Hardeman*, supra, that no evidence was presented at Mr. Hardeman's

union trial other than testimony concerning the facts and circumstances of the incident involved. This would seem to be true in the usual case and ordinarily end our inquiry.

In the present case, Plaintiff has raised a free speech claim under 29 U.S.C. § 411(a)(2). His claim is, essentially, that the charge trial and $250 fine have been used in an attempt to silence what he considers to be his opposition to the viewpoint espoused by the part of his union that is in control of the union offices. The Court will not, on the whole, get into this squabble. Plaintiff does not claim that any officer of any local, Defendant Conference or Defendant International was not duly elected. So the only assumption that can be made is that the officers speak for the membership.

Plaintiff's contention is not so much that he did not know that the Defendants would look upon his teaching an open shop apprenticeship class with such disfavor as it is that he disagrees with their position and has the right to espouse his disagreement.

■ Undoubtedly, he has a right to voice his opinions either verbally, in writing or through symbolic acts.

The Fifth Circuit has held that the free speech rights of union members may be limited in three ways. Those three are:

(1) Reasonable rules pertaining to conduct of meetings; (2) reasonable rules as to the responsibility of every member toward the union as an institution; and (3) reasonable rules requiring members to refrain from conduct interfering with the union's performance of its legal or contractual obligations.[5]

The second listed limitation is the one pertinent to our inquiry.

*Airline Maintenance Lodge 702 v. Loudermilk*[6] is the case cited by Plaintiff that is the closest to his own situation as far as "reasonable rules" go.

In *Airline Maintenance Lodge 702 v. Loudermilk*, the union had fined Mr. Loud-

---

**4.** Supra, p. 1104.

**5.** *Airline Maintenance Lodge 702, I.A.M. & A.W. v. Loudermilk*, 444 F.2d 719, 721 (1971).

**6.** Ibid.

ermilk for joining and becoming president of a rival union. The Fifth Circuit said that this was improper though the union could have legally expelled him. Mr. Loudermilk's situation was that he was an employee of an airline which had a union shop agreement with the union that had fined him. The union shop provision of that contract was allowed by § 2 Eleventh of the Railway Labor Act, 45 U.S.C. § 152 Eleventh.[7] The Fifth Circuit's reasoning was that Mr. Loudermilk had been compelled to join Airline Maintenance Lodge 702 which he was trying to replace with another union and that this had free speech overtones so the fine was improper. The difference between the fine imposed and the expulsion that could have been imposed was the last part of § 2 Eleventh which says, in essence, that Mr. Loudermilk could have kept his job with the airline if he had been expelled for joining another union and becoming its president. So expulsion would have harmed him not, where the fine harmed him economically.

Plaintiff's situation is far different. He does not lay bricks for a living. There is no showing that the Brick Institute of Texas requires him to be a member of any union, let alone Defendant International. No evidence has been presented that Plaintiff's entry into the union was anything other than completely voluntary. Lastly, Plaintiff is a resident of a "Right to Work" state[8] and not covered by a law such as the Railway Labor Act, 45 U.S.C.A. § 152 Eleventh which allows union shops.

This lack of coercive membership tips the balance in favor of the Defendants. Plain-

tiff's conduct in teaching the open shop apprenticeship class may have had some free speech elements in it. But there has been no showing that Plaintiff undertook to teach that class for any reason other than to maintain good relations with members of the industry because of his position with the Brick Institute of Texas.[9]

In summation, procedurally, Plaintiff's union trial could have been handled better by Defendant Local 5. Assumably, a new trial could be ordered to clear up any inadequacies in procedure. But in light of the burdens of going forward with evidence and proof that are required and Plaintiff's willing admission to have taught the open shop apprenticeship class as charged, the result would not differ. Therefore, judgment will be entered for the Defendants.

---

7. 2. Eleventh. Notwithstanding any other provisions of this chapter, * * * any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted—

(a) to make agreements, requiring, as a condition of employment, that within sixty days following the beginning of such employment * * * all employees shall become members of the labor organization representing their craft or class: *Provided*, that no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and

conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employees to tender periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership.

8. Vernon's Ann.Civ.St. Art. 5207a.

9. Apparently, Plaintiff was paid for teaching the class but did not appear to be much of a motivation as Plaintiff was only supposed to teach until another qualified instructor was found.